## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joan Pendergrass | : | |
| 24 Ledge Hill Street | : | |
| Randolph, Massachusetts 02368 | : | |
| *Plaintiff,* | : | |
| | : | |
| vs. | : | Civil Action No.: |
| | : | |
| Theodore Pendergrass, II | : | |
| 1 Redtail Court | : | |
| West Chester, PA 19382, | : | |
| and | : | **JURY TRIAL DEMANDED** |
| Robert A. Bacine, Esquire | : | |
| Friedman Schuman, PC | : | |
| 101 Greenwood Avenue | : | |
| 5th Floor | : | |
| Jenkintown, PA 19046-0189, | : | |
| and | : | |
| Jack A. Rounick, Esquire | : | |
| Law Offices of Jack A. Rounick, LLC | : | |
| 25 East Marshall Street | : | |
| Norristown, PA 19401, | : | |
| and | : | |
| Kimberly Joyce Leifheit Cleveland | : | |
| 1032 Gallery Road | : | |
| Wilmington, DE 19805, | : | |
| And | : | |
| Timothy Holman, Esquire | : | |
| Smith Kane Holman, LLC | : | |
| 112 Moores Road | : | |
| Suite 300 | : | |
| Malvern, PA 19355, | : | |
| And | : | |
| La Donna Hollerway | : | |
| 1370 Beatline Road | : | |
| Tunica, MS 38676, | : | |
| And | : | |
| Tishia Burnett | : | |
| 4700 West Village Crossing, Unit 5529 | : | |
| Smyrna, GA 30080, | : | |
| And | : | |

Glen H. Ridenour, Esquire             :
Klenk Law, LLC                        :
1701 Walnut Street                    :
6th Floor                             :
Philadelphia, PA 19103,               :
          *Defendants.*

## COMPLAINT

## INTRODUCTION

This action arises out of a will contest initiated by Theodore D. Pendergrass, II ("Theodore, Jr.") over his famous father's last will and testament.  Theodore, Jr. attempted to circumvent his father's will by producing a will that left decedent's entire estate to himself rather than to plaintiff, the decedent's wife, Joan Pendergrass ("Mrs. Pendergrass"). The will Theodore, Jr. presented, which temporally followed the will now in place, was judicially determined to be a forgery after protracted litigation in the Montgomery County, Pennsylvania Orphans Court.  The illusion and fantasy created by Theodore, Jr. and propagated by his lawyers, forced Mrs. Pendergrass to undergo years of turmoil and anguish as her relationship with her late husband was unmercifully scrutinized.  In addition, she was forced to spend over three quarters of a million dollars in legal fees to establish that the Defendants were attempting to perpetrate a fraud on her and the Court.  Once the Montgomery Court determined Theodore, Jr. forged the will he presented to the Court, Theodore, Jr.'s step-sisters, La Donna Hollerway and Tishia Burnett (collectively the "daughters"), by and through their counsel, Glen H. Ridenour, Esquire, brought an appeal from probate to invalidate the will Mrs. Pendergrass presented for probate. This additional litigation caused Mrs. Pendergrass to incur further costs to prove the legitimacy of the will she filed. Mrs. Pendergrass, by this lawsuit, avails herself of the remedies codified in 42 Pa.C.S. §8351, *et seq.,* also known as the Dragonetti Act, and brings this action against Theodore, Jr., his lawyers, the daughters, their lawyer, and a notary public, who certified a

forged signature, to recover her losses and for the harm occasioned by this wrongful use of civil proceedings.

## PARTIES

1.      Plaintiff, Joan Pendergrass, is an adult resident of the State of Massachusetts with an address located at 24 Ledge Hill Street, Randolph, MA 02368.

2.      Defendant, Theodore Pendergrass, II, ("Theodore, Jr.") is an adult resident of the Commonwealth of Pennsylvania with an address of 1 Redtail Court, West Chester, PA 19382.

3.      Defendant, Robert A Bacine, Esquire is an attorney with a business address located at Friedman Schuman, PC, 101 Greenwood Avenue, 5th Floor, Jenkintown, PA 19046-0189.

4.      Defendant, Jack A. Rounick, Esquire is an attorney with a business address located at Law Offices of Jack A. Rounick, LLC, 25 East Marshall Street, Norristown, PA 19401.

5.      Defendant, Timothy J. Holman, Esquire is an attorney with a business address located at Smith Kane Holman, LLC, 112 Moores Road, Suite 300, Malvern, PA 19355.

6.      Defendant, La Donna Hollerway, is an adult resident of Mississippi with an address of 1370 Beatline Road, Tunica, MS 38676.

7.      Defendant, Tishia Burnett, is an adult resident of Georgia with an address of 4700 West Village Crossing, Unit 5529, Smyrna, GA 30080.

8.      Defendant, Glen H. Ridenour, Esquire is an attorney with a business address located at Klenk Law, LLC, 1701 Walnut Street, 6th Floor, Philadelphia, PA 19103.

9.      Defendant, Kimberly Joyce Cleveland, formerly known as Kimberly Joyce Leifheit, is a notary public in the State of Delaware and a resident of the State of Delaware with an address located at 1032 Gallery Road, Wilmington, Delaware, 19805.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 (a) based upon diversity of citizenship between the parties.  The amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000.  Furthermore, the amount in controversy exceeds the compulsory arbitration limits of $125,000 within the United States District Court for the Eastern District of Pennsylvania.

11.     This Court may exercise personal jurisdiction over Ms. Cleveland because she falsified a document that she knew would be presented for probate in the Commonwealth of Pennsylvania, where the decedent lived and because she gave testimony in support of her falsehood in a Pennsylvania courtroom within this judicial district.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the activities giving rise to these causes of action occurred in this District and Plaintiff suffered injury within this District.

## FACTS

13.     On January 13, 2010, Theodore D. Pendergrass ("Teddy Pendergrass"), the celebrated Philadelphia rhythm and blues musician, passed away due to respiratory failure. Teddy Pendergrass was also a quadriplegic since 1982, leaving him with limited use any of his four extremities.

14.     Teddy Pendergrass was survived by his wife, Joan Pendergrass ("Mrs. Pendergrass"), as well as three adult children, who were not the biological offspring of Mr. Pendergrass and Joan Pendergrass.  Mr. Pendergrass also had two step-daughters.

15.     On January 20, 2010, Mrs. Pendergrass applied for, and was granted, letters testamentary pursuant to a Will dated March 23, 2009 and a codicil dated October 17, 2009.

16.     Under the terms of the March 23, 2009 Will and October 17, 2009 codicil, Mrs. Pendergrass was the sole beneficiary of the Estate of Theodore D. Pendergrass ("Estate").

17.     After Mrs. Pendergrass was granted letters testamentary, Theodore, Jr., undertook a series of steps to deprive Mrs. Pendergrass of any benefit from the Estate.

18.     First, Theodore, Jr. engaged James Mannion, Esquire to challenge the October codicil to the March 2009 Will. He did so by filing a Petition sur appeal from the Probate Decree of the Register of Wills challenging the validity of the Codicil, and to open the Decree of the Register of Wills with the hopes of being allowed to present to the Register a petition for the probate of a Will dated May 24, 2009.

19.     The purported May 24, 2009 Will named Theodore, Jr. as the Executor, and left the entire estate to Theodore, Jr.

20.     By Memorandum Opinion dated August 4, 2010, the Trial Court sustained the appeal from the Probate Decree, but only as to that portion of the Decree of the Register of Wills admitting to probate the Codicil. The Trial Court did not strike the January 25, 2010 Probate Decree in its entirety, thus leaving the March 23, 2009 Will as the applicable document governing the disposition of the Estate.

21.     Mrs. Pendergrass appealed that portion of the Orphans' Court's decision to strike the codicil.

22.     Theodore, Jr. also appealed the Orphans' Court decision in striking only that portion of the Decree of the Register of Wills admitting to probate the Codicil, rather than striking the Decree in its entirety.

23.     The Superior Court quashed both appeals in an Opinion filed August 8, 2011, remanding the case to the Orphans' Court for further proceeding.

24.     Thereafter, on January 31, 2012, Theodore, Jr. with the aid of counsel, Mr. Mannion, Defendants Mr. Bacine and Mr. Rounick, filed a petition in the Montgomery County, Pennsylvania Orphans Court requesting a hearing on the *prima facie* validity of a May 2009 will, which Theodore, Jr. knew he had forged, but that he nonetheless presented to the Orphans Court in order to take control of the Estate.

25.     Because the May 24, 2009 Will appeared on its face to be valid, and it post-dated the March 23, 2009 Will previously presented by Mrs. Pendergrass, by Order dated September 13, 2012, the Orphans' Court ordered that the original Decree of Probate be opened, and that the Register of Wills be authorized to act upon a Petition to accept a later- dated will.

26.     Mr. Mannion filed that Petition the next day offering for probate the May 24, 2009 Will, and without a hearing on the validity of same, or notice to Mrs. Pendergrass that a Petition had been filed, the Register of Wills revoked the Letters Testamentary that had been issued to Mrs. Pendergrass under the prior Decree of Probate, and granted letters testamentary to Theodore, Jr., who was designated as the Executor under that May 24, 2009 Will.

27.     On October 1, 2012, Mrs. Pendergrass initiated a legal challenge to the May 24, 2009 Will, asserting, *inter alia*, that it was a forgery. That action, captioned *In Re: Theodore Pendergrass, deceased,* proceeded in the Court of Common Pleas Montgomery County Orphan's Court Division, at docket number 2010-X0189.

28.     Mrs. Pendergrass' challenge resulted in a hearing tried over the course of eight (8) hearing sessions that took place between November 2013 and May 2014.

29.     Shortly before the hearings began, Defendant Mr. Holman entered an appearance and began to represent Theodore, Jr. together with Mr. Bacine and Mr. Rounick.

30.     Before the hearings regarding the forgery began, Mrs. Pendergrass' attorneys sent a series of letters to Theodore, Jr.'s counsel to advise of the reasons why Theodore, Jr.'s assertions regarding the validity of the May 24, 2009 will were improper and that an adverse ruling would result in a claim of abuse of process being made against Theodore, Jr.

31.     Among other stated bases for invalidity, Mrs. Pendergrass identified the utter implausibility of the circumstances under which Theodore, Jr. claimed the May 24, 2009 Will was created.

32.     First, Theodore, Jr. contended that the May 24, 2009 Will was prepared by Teddy Pendergrass, himself, on his computer, then transferred by Teddy Pendergrass onto a thumb drive, then handed the thumb drive to Theodore, Jr., who then took that thumb drive to his home computer to print it out, and who then claimed, when asked to produce the computer during discovery in the case, that his home computer "broke," so he threw it away.

33.     Theodore, Jr. then contended that on the Sunday of Memorial Day Weekend in 2009 he, accompanied by his mother-in-law and grandmother (Teddy Pendergrass' mother), escorted Teddy Pendergrass from his home in Penn Valley, Pennsylvania, after completion of a family dinner with multiple guests in attendance, without advising or requesting the consent of anyone else allegedly at the home, including Mrs. Pendergrass or the nurses who regularly attended to Teddy Pendergrass, and drove him to Delaware.

34.     Theodore, Jr. claimed that once in Delaware, he pulled off the side of a road that was just off of Route I-95, where, in the presence of a Delaware notary public, who allegedly had been notified previously to meet Theodore, Jr. at that exact same location and same time, Theodore, Jr. produced the May 24, 2009 Will he had printed and presented it to the notary, now standing outside beside the car, who placed the document on a clip board, who then handed it back to Teddy Pendergrass through a window, who then "signed" the May 24, 2009 Will by physically writing his initials on seven (7) separate places in the document, after which it was passed around the car to the two women in the car to sign as witnesses, who then handed it back out the window to the notary for her to affix her notarial seal, who then handed the completed document back to Theodore, Jr., who was sitting in the driver's seat, who claimed to have held onto it from and after that date, but who failed to present the document to probate after his father died.

35.     The notary public, Kimberly Joyce Leifheit Cleveland, affixed a notarial seal on the forged document and later testified in the course of the hearings on the May 24, 2009 Will's validity that the seal and the document were authentic.  This was false testimony and the seal was falsely applied to the document.

36.     Allegedly, Theodore, Jr. returned his father to Penn Valley as soon as this was done.  Theodore, Jr. also alleged that no one in Teddy Pendergrass' household, including his wife or nurses, noticed or knew that Teddy Pendergrass had left the house before Theodore, Jr. brought his father home.

37.     This bizarre factual predicate formed the basis on which Theodore, Jr., through his counsel, Mr. Bacine, Mr. Rounick, and Mr. Holman [and Mr. Mannion as part of the *prima facie* hearing] contended that the May 24, 2009 Will was created.  This was the story they

presented to rebut the challenge brought by Mrs. Pendergrass to the validity of the May 24, 2009 Will.

38.    Theodore, Jr. related this odd story during a deposition only to be caught in repeated inconsistent and contradictory representations.  The deposition was given before the hearings and should have given ample notice that the circumstances under which the May 24, 2009 Will was allegedly created were manifestly implausible.

39.    At all relevant times hereto, Theodore, Jr. and his attorneys were advised that the story of how the May 24, 2009 Will was executed was both implausible and impossible because, *inter alia*, Teddy Pendergrass was incapable of signing his own name, could not have left his home unnoticed, and certainly did not have to travel to another state to locate a notary public.

40.    At the time of his death, and since becoming a quadriplegic in 1982, Teddy Pendergrass could not use his hands to write, and could only hold a pencil in a device strapped to his wrist to operate his wheelchair and computer.

41.    Despite repeated warnings that Theodore, Jr.'s story was untrue and would not prevail in a Courtroom, Theodore, Jr. and his counsel insisted that they held the only valid Will and stood behind their story.

42.    Indeed, on multiple occasions as early as in December 2011, Defendants Rounick and Bacine were advised to withdraw all claims in support of the May 24, 2009 Will.

43.    As a result of their intransigence (and that of their client, Theodore, Jr.), the matter proceeded before the Orphans Court in Montgomery County, Pennsylvania beginning on November 20, 2013.

44.    Mr. Bacine, Mr. Rounick and Mr. Holman continued with the litigation over the validity of the patently invalid May 24, 2009 Will.

45.     The hearings went forward as scheduled.  During the course of the hearings, Mr. Holman, Mr. Bacine and Mr. Rounick proffered evidence designed to demonstrate the validity of a will that their client knew all along was forged and which will they knew was created under the most bizarre, unlikely, and incredible of circumstances.

46.     At the conclusion of the eight (8) days of hearings, and full briefing by both parties on October 14, 2014, the Court unequivocally concluded that the May 24, 2009 Will, advanced by Theodore, Jr. and his counsel, was a forgery. (See, Opinion of Orphans Court, attached as Exhibit A).

47.     In its Opinion, the Court stated: "we find, by clear and convincing evidence that the proponent's entire case was a fabrication.  He, his mother-in-law and the notary public all gave false testimony."

48.     It took roughly six (6) years and $850,000 in legal fees, which time and expense could have been and should have been avoided, for Mrs. Pendergrass to prove what Theodore, Jr. and each of his attorneys, Mr. Bacine, Mr. Rounick, and Mr. Holman knew all along—that the May 24, 2009 Will was a forgery.  These attorneys allowed their client, Theodore, Jr. to admit a false will to probate and continued to defend its validity for so many years, and knew or should have known all along that there was no reasonable basis on which to continue to pursue the legitimacy of the May 24, 2009 Will.

49.     On February 26, 2015, four (4) months after the Montgomery Court concluded that Theodore, Jr.'s proposed will was forged, Theodore, Jr.'s step-sisters, La Donna Hollerway and Tishia Burnett engaged Glen H. Ridenour from Klenk Law Firm to appeal from probate, once again, the March 23, 2009 Will.

50.     Despite the Montgomery Court's explicit language determining "by clear and convincing evidence" that Theodore, Jr.'s case was a "fabrication," Mr. Ridenour entered into and continued with the representation of the step-sisters.

51.     On November 2, 2016, after two years of further litigation from the Montgomery Court's decision, Mr. Ridenour withdrew his appearance on behalf of the step-sisters.

52.     On November 15, 2016, a hearing on the appeal from probate was scheduled for January 24, 2017. Both La Donna Hollerway and Tisha Burnett failed to appear at the evidentiary hearing, and were not heard from again.

53.     On January 28, 2017, the Orphans Court entered a final order dismissing the appeal from probate. (See, Order, attached as Exhibit B).  It is from this final order that these claims ripen.


### COUNT I: WRONGFUL USE OF CIVL PROCEEDINGS
### Plaintiff v. All Defendants

54.     Plaintiff incorporates each of the foregoing paragraphs as though more fully stated in this count.

55.     42 Pa. C.S. § 8351, *et seq*. codifies the tort known as Wrongful Use of Civil Proceedings.

56.     This statute is commonly referred to as the "Dragonetti Act."

57.     The Dragonetti Act provides that a person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings.  When civil proceedings have terminated favorably to a party, that party may seek redress for harm to them as a result of the procurement, initiation or continuation of  those proceedings when:

(1)     He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2)     The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. C.S. § 8351.  Under Pennsylvania law interpreting the statute, a claim arising under the Dragonetti Act is not ripe until there is a final order and all appeals are resolved.

58.     The Montgomery County Orphans Court determined that the May 24, 2009 Will propounded by Theodore Pendergrass, Jr. was a forgery.  Exhibit A.

59.     The forged will was the only basis on which Theodore, Jr. challenged the March 23, 2009 Will presented by Mrs. Pendergrass.

60.     Presenting a forged will to probate is *ipso facto* a wrongful use of civil proceedings.

61.     As a result of Defendant Theodore, Jr.'s wrongful acts in presenting a false challenge to the March 23, 2009 Will, Plaintiff Mrs. Pendergrass was caused to expend substantial sums of money to engage counsel to represent her through the litigation of this false challenge to the valid will she presented to probate.

62.     Moreover, the daughters' (and Ridenour's) wrongful acts in filing an appeal from probate to invalidate the March 23, 2009 Will caused Mrs. Pendergrass to expend even more money to prove the legitimacy of the original Will.

63.     Mrs. Pendergrass, through these proceedings now seeks reimbursement for the extraordinary expenses occasioned by the Defendants' wrongful use of civil proceedings.

64.     The Dragonetti Act, in 42 Pa. C.S. § 8352, also imposes liability on the counsel of record for a party who engages in a wrongful use of civil proceedings.  The attorney will not be liable if (i) he reasonably believes that the claim is valid under existing or developing law; or (ii)

that he believes in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or "maliciously injure" the opposing party.

65.     Defendants Bacine, Rounick and Holman are attorneys of record for Theodore, Jr. in the will contest.

66.     Bacine, Rounick and Holman continued to litigate Theodore, Jr.'s contest of the March 23, 2009 Will and proffered the false May 24, 2009 Will to support their client's challenge to the valid March 23, 2009 Will--even after they knew the Will was neither genuine nor authentic nor valid.

67.     These attorneys did not intend by their actions to extend the law nor could they have believed that forged legal documents are consistent with existing probate laws.

68.     These attorney defendants took the course of action directed by their client, Theodore, Jr. for the sole purpose of harassing Plaintiff Mrs. Pendergrass.

69.     Accordingly, they are liable, together with their client, Defendant Theodore, Jr., for the harm suffered by Mrs. Pendergrass as a result of their wrongful use of civil proceedings.

70.     In addition, Defendant Ridenour is the attorney of record for the daughters, La Donna Hollerway and Tishia Burnett.

71.     Ridenour filed an appeal on behalf of the Daughters from probate in Montgomery County, Pennsylvania Orphans Court to invalidate the March 23, 2009 Will.

72.     In this appeal, challenging the validity of the March 23, 2009 Will, Ridenour, on behalf of the Daughters, raised specious arguments that were not intended to prevail or to effect change in the law, but rather were asserted simply to harass Mrs. Pendergrass and cause her to spend additional sums on counsel fees.  Ridenour could not have actually believed that the March 23, 2009 Will was lacking in formality, when it was not, or that it was created as a result

of a mistake, or that it was a forgery.  The Orphans Court initially granted preliminary

objections, which were later reversed after the Daughters filed exceptions.  Regardless, after a

full hearing, none of those arguments had any merit and the March 23, 2009 Will was validated.

73.     Ridenour was without probable cause to file this proceeding on behalf of the

Daughters.

74.     Ridenour took the course of action directed by his clients, La Donna Hollerway

and Tishia Burnett for the sole purpose of harassing Plaintiff Mrs. Pendergrass and without any

probable cause on which to pursue their appeal.

75.     Accordingly, he is liable, together with his clients, for the harm suffered by Mrs.

Pendergrass as a result of their wrongful use of civil proceedings.

76.     As a result of the wrongful acts of defendants, plaintiff has suffered emotional

harm, stress, humiliation, diminished reputation, and anxiety, all of which is compensable under

the Dragonetti Act as provided for in 42 Pa. C.S. § 8353 and for which plaintiff seeks an award

of damages. Under this same provision, 42 Pa. C.S. § 8353, Plaintiff also seeks punitive

damages.  It is a crime to make, complete, execute, authenticate issue or transfer any writing so

that it purports to be the act of another person who did not authorize that act.  The Montgomery

County Orphans Court determined that Theodore, Jr. and Leifheit engaged in such conduct.

Such activity gives rise to punitive damages under the circumstances and as provided for in the

Dragonetti Act.

WHEREFORE, Plaintiff Joan Pendergrass seeks judgment in her favor and against the

Defendants in an amount in excess of $125,000 together with punitive damages, attorneys' fees

from the underlying dispute, interest and costs and all other damages recoverable under the law.

## COUNT II – CONCERTED TORTIOUS ACTION
### Plaintiff v. All Defendants

77.     Plaintiff incorporates each of the foregoing paragraphs as though set forth at length below.

78.     Defendant, Kimberly Leifheit Cleveland was at all times relevant to this action a notary public in and for the State of Delaware.

79.     The duties of a notary public include authentication of public documents and signatures affixed thereto.

80.     A Notary Public in Delaware is legally charged with the duty of ensuring that an individual whose signature is being certified in in fact the person he or she claims to be.

81.     By virtue of defendant Kimberly Leifheit Cleveland act in certifying the signature on the May 24, 2009 Will when the signature was a forgery constitutes participation in and conspiracy to defraud.

82.     Although Ms. Cleveland was neither a litigant in the will contest action nor an attorney of record, because she falsely notarized the forged May 24, 2009 Will and later testified under oath to the May 24, 2009 Will's authenticity, she offered assistance in tortious conduct, which imputes liability of the other defendants onto her as well.

83.     Under Pennsylvania law, when each Defendant's encouragement and assistance one for the other was a substantial factor in allowing each to engage in the tort of wrongful use of civil proceedings, even if acting alone, each defendant individually did not engage in the tortious conduct, each defendant who offered such aid or encouragement is equally liable for the tortious conduct, in this case wrongful use of civil proceedings.

84.     Together, particularly through the guise of Ms. Cleveland's falsely notarized document, which provided the initial prima facie evidence of validity of the May 24, 2009 Will, the Defendants each contributed to perpetuating a wrongful use of civil proceedings.

85.     Each defendant actively, knowingly, and intentionally facilitated these tortious and unlawful acts and/or actually committed the tortious acts otherwise alleged in this Complaint.

86.     As a result of these concerted tortious acts, Plaintiff Mrs. Pendergrass has suffered harm including but not limited to payment of extraordinary legal costs to defend against Theodore, Jr.'s will contest occasioned by the presentation of the falsely notarized May 24, 2009 forged Will, emotional distress, anxiety and diminished reputation.

87.     The conduct of each of the defendants was outrageous, willful, malicious, and in reckless disregard for the rights of the Plaintiff, which warrants the imposition of punitive damages in this case.

WHEREFORE, Plaintiff Joan Pendergrass seeks judgment in her favor and against the Defendants in an amount in excess of $125,000 together with punitive damages, attorneys' fees from the underlying dispute, interest and costs and all other damages recoverable under the law.

Respectfully submitted:

**HAINES & ASSOCIATES**

_____
CLIFFORD E. HAINES (09882)
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
(215) 246-2200 (t)
(215) 246-2211 (f)
*Attorney for Plaintiff Joan Pendergrass*

Dated: February 5, 2018

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues so triable.

Respectfully submitted:

**HAINES & ASSOCIATES**

_____
CLIFFORD E. HAINES (09882)
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
(215) 246-2200 (t)
(215) 246-2211 (f)
*Attorney for Plaintiff Joan Pendergrass*

Dated: February 5, 2018