**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOAN PENDERGRASS**<br><br>              **Plaintiff,**<br><br>   **v.**<br><br>**THEODORE PENDERGRASS, II, *et al.*,**<br><br>              **Defendant.** | **CIVIL ACTION NO. 18-478** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                              **February 10, 2021**

Plaintiff Joan Pendergrass brings this action for wrongful use of civil proceedings and concerted tortious action based on the proceedings on the estate of her late husband, famed Philadelphia soul singer Theodore D. Pendergrass, known as Teddy Pendergrass.[1] Before the Court are certain Defendants' motions for summary judgment and Plaintiff's motion for partial summary judgment as to liability.

### I.    BACKGROUND AND PROCEDURAL HISTORY[2]

On January 13, 2010, Teddy passed away. He was survived by his wife, Joan, and his three adult children, Theodore Pendergrass, II, Tishia Burnett, and LaDonna Hollerway. Joan and Teddy were married on March 23, 2008; she is not the mother of Teddy's children. Theodore is a half-sibling to Burnett and Hollerway.[3] An accident in 1982 had left Teddy a quadriplegic with limited use of his arms. Teddy lived at his Penn Valley, Pennsylvania home with Joan and

---

[1] Because numerous individuals discussed in this Memorandum share the last name Pendergrass, the Court will refer to them by first name for the sake of clarity.

[2] This section is based upon the facts to which the parties agreed, *see* Joint Statement Stipulated Facts [Doc. No. 86-2], unless otherwise noted.

[3] *See* Theodore Dep. Dec. 9, 2019 [Doc. No. 92-4] at 6.

his mother, Ida Pendergrass, where a nursing home care company provided full time assistance to Teddy.[4]

Teddy's estate proceedings took place from 2010 to 2017 in Montgomery County Orphans' Court before the Honorable Stanley Ott. There were four relevant documents:

1) 1987 Will – The 1987 Will was drafted by Teddy's attorney and executed by Teddy on October 5, 1987. It left his estate to his then-wife, Karin, and his three children.

2) March 2009 Will – The March 2009 Will was drafted by Teddy's attorney and was the "joint will" of Teddy and Joan. It was executed on March 25, 2009. It made Joan the primary beneficiary of Teddy's estate if he were to predecease her. The will left only a painting to Theodore[5] and it left twenty-five percent of "all ongoing income derived from the use of the name and/or brand of 'Teddy Pendergrass'" to "'TP Alliance,' a nonprofit corporation."

3) Codicil – The Codicil was drafted by Teddy's attorney and dated October 17, 2009. It struck the provisions of the March 2009 Will benefitting Theodore and the TP Alliance.

4) Theodore's Will – Theodore's Will was dated May 25, 2009. It was purportedly drafted by Teddy and left the entire estate to Theodore. Theodore claimed the following about this will:[6]

> On the Tuesday before Memorial Day in 2009, Teddy supposedly told Theodore that he wanted Theodore to take care of the family if anything were to happen to him. He asked Theodore to help execute a will. He told Theodore to

---

[4] Orphans' Ct. Op. dated Oct. 14, 2014 [Doc. No. 31-1] at 3.

[5] The painting was of Teddy.

[6] Adapted from Orphans' Ct. Op. dated Oct. 14, 2014 [Doc. No. 31-1] at 25–27.

take a flash drive from his desk containing a will, and said that he wanted his mother Ida and Theodore's mother-in-law, Juanita Saunders, to serve as witnesses.

On the Saturday before Memorial Day, Theodore told Teddy that he had arranged for Kimberly Joyce Leifheit Cleveland, a notary they both had worked with before, to notarize the will the next day. That night, Theodore opened the will on his computer at his house. He inserted the next day's date and printed it out.[7]

The next day, there was an early family dinner at Teddy's house in Penn Valley. After dinner, Joan wasn't feeling well and retired to her bedroom. Theodore drove Teddy, Saunders, and Ida to Delaware in Teddy's specially modified van to meet the notary. Theodore pulled over on the side of the road next to a gas station where the notary was waiting. The will was passed around the van, and Teddy, Ida, and Saunders signed and initialed it. Cleveland then notarized it. Theodore then drove everyone back to Teddy's home in Pennsylvania, where Theodore returned the flash drive to Teddy and placed the executed will in his car for safekeeping.

---

[7] Theodore claimed that in or around 2010, his computer crashed and could not be repaired and so he threw it away. Theodore Dep. Mar. 21, 2013 [Doc. No. 90-8] at 57–58. Theodore also claimed that in 2010 or 2011, the printer that printed the will began to malfunction and so he threw it in the trash as well. *Id.* at 60–61.

### A.  Orphans' Court Proceedings

On January 20, 2010, Joan applied for, and was granted, letters testamentary pursuant to the March 2009 Will and the Codicil. Shortly thereafter, Theodore attempted to probate Theodore's Will but was denied.[8]

#### 1.   Theodore's challenge of the March 2009 Will and the Codicil

On February 19, 2010, Theodore, represented by attorneys Robert Bacine and Jack Rounick, brought a challenge against the March 2009 Will and the Codicil, arguing that they were not properly executed.[9] This challenge was brought, in part, because the date on Theodore's Will placed it between the execution of the March 2009 Will and the Codicil, and so it could not be presented if the Codicil was valid.

Because Bacine and Rounick were not litigators, attorney James Mannion was hired by Theodore to present the case.[10] In an order dated August 4, 2010, the Orphans' Court held that the Codicil was invalid as improperly executed and struck it.[11] The March 2009 Will was left as the document governing the disposition of the estate. The parties filed cross-appeals—Joan appealed the portion of the decision striking the Codicil and Theodore appealed the portion admitting the March 2009 Will. On August 8, 2011, the Superior Court quashed the appeals.

#### 2.   Prima facie hearing

On January 31, 2012, Theodore filed a petition requesting a *prima facie* validity hearing for Theodore's Will. Mannion represented Theodore at the evidentiary hearing, and Joan,

---

[8] Theodore Dep. Mar. 21, 2013 [Doc. No. 90-8] at 67–69.

[9] Orphans' Ct. Docket, 2010-X0189 [Doc. No. 90-1].

[10] James Mannion is not a party to this action.

[11] *See* Luber Dep. Dec. 16, 2019 [Doc. No. 92-6] at 11.

Theodore, Ida, Saunders, and Cleveland testified.[12] On September 13, 2012, Judge Ott determined that Theodore had made a *prima facie* showing as to the validity of Theodore's Will. It was accepted for probate and Theodore was appointed executor of the estate.

### 3. *Joan's challenge of Theodore's Will*

On October 1, 2012, Joan contested Theodore's Will. She asserted that "1) It was not signed by [Teddy]; 2) It was a forgery; 3) It was not prepared at [Teddy]'s request; 4) [Teddy] was not capable of signing his name to the document; and 5) [Teddy] was not in Delaware on the date the document was allegedly signed."[13] Theodore filed an answer, and a hearing was scheduled for November 20, 2013.

Mannion withdrew after the *prima facie* hearing because of non-payment, but Bacine and Rounick continued to represent Theodore during discovery.[14] About two weeks before the start of the trial, Bacine and Rounick contacted attorney Timothy Holman to take over the case.[15] After reviewing the files and docket, and speaking with Mannion, Bacine, Rounick, and Theodore, Holman took the case on contingency.[16] Bacine and Rounick withdrew.[17]

The trial consisted of eight days of evidentiary hearings between November 20, 2013, and May 15, 2014. Eleven witnesses testified, including Joan, Theodore, Cleveland, Saunders,

---

[12] *See Prima facie* Hr'g Tr. [Doc. No. 90-7].

[13] Joint. Statement Stipulated Facts [Doc. No. 86-2] at 6.

[14] Rounick Dep. Feb. 11, 2020 [Doc. No. 92-3] at 55.

[15] Holman was recommended by Mannion as someone who would be able to try the case on short notice. *see id.* at 55–56.

[16] Holman Dep. Feb. 20, 2020 [Doc. No. 92-7] at 11–20.

[17] Bacine and Rounick withdrew, in part, because they had not been paid by Theodore. *See* Bacine Dep. Feb. 12, 2020 [Doc. No. 92-2] at 122; Rounick Dep. Feb. 11, 2020 [Doc. No. 92-3] at 45.

and Ida. The parties then submitted comprehensive briefs.[18] On October 14, 2014, the Orphans'

Court issued an opinion, finding that Joan "established conclusively that [Theodore's Will] was

forged."[19] Judge Ott found, by clear and convincing evidence, that Theodore's "entire case was a

fabrication" and concluded that Theodore, Saunders, and Cleveland "all gave false testimony."[20]

Theodore did not appeal Judge Ott's order and it became final on November 14, 2014.[21] The

March 2009 Will was again admitted to probate, and Holman withdrew his appearance.

In addition to finding the will to be a forgery, Judge Ott ordered that Theodore file an

account of his administration of Teddy's estate for his time as executor. Theodore hired attorney

Glen Ridenour to perform the accounting.[22] On March 4, 2015, Theodore filed the accounting, to

which Joan and the Office of Attorney General of the Commonwealth of Pennsylvania[23] filed

objections.[24] On January 23, 2017, Joan and Theodore entered into an agreement to settle all

remaining legal issues related to the estate.[25]

---

[18] Orphans' Ct. Op. dated Oct. 14, 2014 [Doc. No. 90-2] at 2.

[19] *Id.* at 3, 34.

[20] *Id.* at 32. Judge Ott also found that Theodore caused his grandmother, Ida, to give false testimony at the earlier hearing, but concluded that she likely did not understand her testimony to be untrue. *See id.* at 32 n.4.

[21] In an email dated Oct. 14, Holman informed Theodore that his firm "would not and could not ever agree to file an appeal" to Judge Ott's decision, and given Judge Ott's factual findings, any lawyer who did file an appeal would likely be subject to sanctions. Doc. No. 90-14. In the email, Holman noted the "devastating financial harm" that he incurred on his firm by taking the case on a contingency basis. *Id.*

[22] Ridenour Dep. Dec. 23, 2019 [Doc. No. 92-9] at 11–12.

[23] Acting in its capacity as *parens patriae*.

[24] Luber Dep. Dec. 16, 2019 [Doc. No. 92-6] at 52. *See also* Orphans' Ct. Docket, 2010-X0189 [Doc. No. 90-1].

[25] *See* Def. Holman's Reply Supp. Holman's Mot. Summ. J. [Doc. No. 99] at 8; Estate Settlement Agreement [Doc. No. 99-17]. Joan argues that the agreement only pertains to issues related to the execution of estate. Pl.'s Sur-reply Opp. Def. Holman's Mot. Summ. J. [Doc. No. 103] at 2. At this stage, the Court need not consider the scope or effect of this agreement.

4. *Hollerway and Burnett's challenge to the March 2009 Will*

In February 2015, Teddy's daughters, Hollerway and Burnett—represented by Ridenour[26]—brought a challenge to the March 2009 Will. This challenge was facially unrelated to Theodore's Will, and if it had succeeded, the 1987 Will would have governed the distribution of the estate. On November 2, 2016, Ridenour withdrew his appearance,[27] and on November 15, 2016, Hollerway and Burnett failed to appear at an evidentiary hearing. On January 28, 2017, Hollerway and Burnett's challenge was dismissed, and Joan's control of the estate was final.

**B. Procedural History**

On February 6, 2018, Joan filed this action, invoking the Court's diversity jurisdiction.[28] Plaintiff brought this action against Teddy's adult children, Theodore, Hollerway, and Burnett; their attorneys, Bacine, Rounick, Holman, and Ridenour; and Cleveland the notary. Plaintiff alleged one count of wrongful use of civil proceedings under the Dragonetti Act[29] and one count of concerted tortious action.

By Order dated January 31, 2019, the Court dismissed all claims against Defendant Ridenour, and dismissed the concerted tortious action claims against Defendants Bacine, Rounick, and Holman.[30] On December 3, 2019, Plaintiff dismissed her claims against Burnett

---

[26] Hollerway and Burnett hired Ridenour approximately one month after Theodore had hired him for the accounting of the estate. Ridenour Dep. Dec. 23, 2019 [Doc. No. 92-9] at 11–12.

[27] Ridenour withdrew for financial reasons. Ridenour Dep. Dec. 23, 2019 [Doc. No. 92-9] at 30.

[28] *See* 28 U.S.C. § 1332(a). Plaintiff is a resident of Massachusetts, Defendants are residents of Pennsylvania and Delaware, and the amount in controversy exceeds the statutory requirement.

[29] *See* 42 Pa. C.S. § 8351, *et seq.* This act is commonly referred to as the Dragonetti Act, named for Joseph Dragonetti, an aggrieved litigant who strongly urged the Act's passage. *See Villani v. Seibert*, 159 A.3d 478, 499 n.6 (2017) (Donohue, J., dissenting).

[30] *See Pendergrass v. Pendergrass*, No. 18-478, 2019 WL 9100189, at *5 (E.D. Pa. Jan. 31, 2019).

and Hollerway.[31]  The remaining claims are one count of wrongful use of civil proceedings against Theodore, Rounick, Bacine, Holman, and Cleveland; and one count of concerted tortious action against Theodore and Cleveland.

Defendants Bacine, Rounick, and Holman have moved for summary judgment.[32] Plaintiff has moved for partial summary judgment on the issue of liability against all Defendants.[33] Defendants Cleveland and Theodore have neither moved for summary judgment nor filed any response to Plaintiff's motion.[34]

## II.   LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[35] Summary judgment is appropriate when the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law,[37] and a dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[38]

---

[31] Order dated Dec. 3, 2019 [Doc. No. 67].

[32] *See* Defs. Bacine & Rounick's Joint. Mot. Summ. J. [Doc. No. 86]; Def. Holman's Mot. Summ. J. [Doc. No. 88].

[33] *See* Pl.'s Mot. Partial Summ. J. [Doc. No. 89].

[34] Theodore is proceeding *pro se* and Cleveland is represented by counsel.

[35] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[36] Fed. R. Civ. P. 56(a).

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[38] *Id.*

In evaluating a summary judgment motion, a court may not weigh the evidence or make credibility determinations.[39] The court "must view the facts in the light most favorable to the non-moving party," and must make every reasonable inference in the non-moving party's favor.[40] However, the party opposing summary judgment must still support each essential element on which the party has the burden of proof with concrete evidence in the record.[41]

## III.   DISCUSSION

There are three elements that must be proven for a wrongful use of civil proceedings, or Dragonetti, claim: (1) the underlying civil proceedings were terminated in favor of the plaintiff, (2) the defendant caused these proceedings to be instituted without probable cause or with gross negligence, and (3) the proceedings were instituted primarily for an improper purpose.[42]

### A.  The Presentation of Theodore's Will and Subsequent Will Contest was not a Civil Proceeding under the Dragonetti Act

In *Raynor v. D'Annunzio*, the Pennsylvania Supreme Court recently examined the meaning of the term "civil proceeding" within the Act.[43] At issue was whether a Dragonetti Act claim could be based upon post-trial sanction/contempt proceedings. The appellees argued that the post-trial contempt proceedings had "all, or many, of the normal indicia of a civil lawsuit" and therefore was tantamount to a civil action.[44] The court rejected this argument, and held that

---

[39] *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[40] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[41] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[42] *See* 42 Pa. C.S. § 8351(a); *see also Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. Ct. 1994).

[43] No. 35 EAP 2019, No. 36 EAP 2019, 2020 WL 7560876 (Pa. Dec. 22, 2020). *Raynor* was decided after briefing had concluded on Plaintiff's and Moving Defendant's Cross-Motions for Summary Judgment. The parties submitted supplemental briefs as to the effect of *Raynor* on this action. *See* Docs. No. 106, 107, 108, & 110.

[44] *Id.* at *7.

"intra-case filings, such as the subject post-trial motion for contempt and/or sanctions — do not constitute the 'procurement, initiation or continuation of civil proceedings' as contemplated under the Dragonetti Act."[45]

Plaintiff argues that the Court should narrowly interpret the majority opinion in *Raynor*, and asserts that it only applies to the specific post-trial motion at issue in the case.[46] Plaintiff further argues that the Court should look to the concurrence of Justice Wecht and use the test provided therein.[47] But the holding of the Pennsylvania Supreme Court is neither ambiguous nor vague. As recognized in Justice Saylor's well-reasoned dissent, the majority found that the Act "should be read as entirely excluding intra-case filings."[48]

The presentation of Theodore's Will and subsequent will contest had all "the normal indicia of a civil lawsuit," but they were "intra-case" filings within the overarching estate litigation.[49] They are therefore not—as a matter of law—"civil proceedings" under the Dragonetti Act. Plaintiff's claims must be dismissed as to all Defendants.[50]

The evidence shows that Judge Ott, after multiple hearings, found that Theodore forged his father's will. Theodore, with the help of Saunders and Cleveland, attempted to use the forged will, and the Orphan's Court procedures and proceedings, to take control of the Pendergrass

---

[45] *Id.* at *11.

[46] Pl.'s Resp. Suppl. Brief [Doc. No 110] at 3–4.

[47] *See id.* at 4.

[48] *Id.* at *13 (Saylor, J., dissenting).

[49] The overarching estate litigation was not caused by Defendants or instituted for an improper purpose.

[50] Because all of Plaintiff's Dragonetti claims are based on "intra-case" proceedings, the Dragonetti claims against non-moving Defendants, Theodore and Cleveland, must also be dismissed as a matter of law. Additionally, Plaintiff's claims for concerted tortious action cannot survive without the underlying tort and must be dismissed as well. *See McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005).

estate. He attempted to displace his father's valid will, and in doing so, he extended the estate

proceedings for years at great cost to Plaintiff. Although this conduct would seem to fall squarely

within the purpose of the Dragonetti Act, this Court is bound by the Pennsylvania Supreme

Court's recent holding in *Raynor* that significantly narrowed the definition of a civil proceeding

to exclude as a matter of law the court filings at issue in this case.[51]

### B.  Summary Judgment is Appropriate as to Moving Defendants on the Merits

Even if the presentation of Theodore's Will and will contest were "civil proceedings"

under the Dragonetti Act, summary judgment would still be warranted as to the Moving

Defendants, Bacine, Rounick, and Holman. The Moving Defendants are attorneys, and because

"a Dragonetti action against an attorney is analogous to a legal malpractice action," expert

testimony is required to show that they lacked probable cause.[52] Joan has not presented any

expert evidence, and that alone would be sufficient to grant summary judgment in favor of the

attorneys.[53]

Additionally, Joan cannot show that Moving Defendants lacked probable cause or were

negligent. An attorney has probable cause to institute or maintain a proceeding if "he reasonably

believes in the existence of the facts upon which the claim is based, and either: (1) reasonably

believes that under those facts the claim may be valid under the existing or developing law; . . .

---

[51] The Court expresses no opinion as to whether there could be any potential criminal liability for Theodore, Saunders, or Cleveland based on Theodore's attempt to fraudulently take control of the Pendergrass estate.

[52] *Schmidt v. Currie*, 217 F. App'x 153, 156 (3d Cir. 2007) (internal quotation marks and citation omitted). "Expert testimony assists the jury in its determination of a defendant's conformity to the relevant standard of care when the standard is one that requires special expertise to comprehend." *Id.* (citations omitted).

[53] *See id.* at 157–58 ("Because the defendants' initiation or continuation of the underlying legal action is not a simple matter easily comprehended by laypersons without the guidance of expert testimony, we agree with the District Court that [the plaintiff's] failure to provide expert testimony entitles defendants to summary judgment in their favor."). Moving Defendants have submitted expert testimony that supports summary judgment in their favor. *See* Expert Report of Roberta A. Barsotti, Esq. [Doc. No. 92-12].

or (3) believes as an attorney of record, in good faith that his procurement, initiation or
continuation of a civil cause is not intended to merely harass or maliciously injure the opposite
party."[54] Because the evidence is largely undisputed,[55] the question of probable cause is "a
matter of law for the court to decide."[56]

### 1. Defendants Rounick and Bacine had probable cause

Before presenting Theodore's Will for probate, Rounick and Bacine met with Theodore,
Ida, Saunders, and Cleveland on several occasions. Each time they all told essentially the same,
consistent story.[57] Indeed, Plaintiff's attorneys, Joel Luber and Don Foster, testified at deposition
that Theodore, the witnesses, and the notary were consistent in their story throughout the
proceedings.[58]

During the proceedings, Luber sent letters to Bacine and Rounick explaining why
Plaintiff believed Theodore's Will to be a forgery and threatening a Dragonetti action.[59] After

---

[54] 42 Pa. C.S. § 8352. The statute lists another possible element which applies to those relying upon the advice of counsel.

[55] Plaintiff has seemingly refused to stipulate to any fact which Plaintiff cannot know independently, *see* Defs. Bacine & Rounick's Joint. Mot. Summ. J. [Doc. No. 86] at 1; *see also, e.g.*, Pl.'s Sur-Reply Opp. Defs. Bacine & Rounick's Joint. Mot. Summ. J. [Doc. No. 98] ¶ 4, and argues that much of the evidence presented by Moving Defendants should not be considered as it is hearsay, *see, e.g.*, *id.* ¶ 37; Pl.'s Reply Supp. Pl.'s Mot. Summ. J. [Doc. No. 100] at 1 n.2. But "hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial." *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995). There is nothing to suggest that any deposed parties would not be able to testify.

[56] *Gentzler v. Atlee*, 660 A.2d 1378, 1382 (Pa. Super. Ct. 1995); *see also Schmidt v. Currie*, 217 F. App'x 153, 155 (3d Cir. 2007) ("The court decides the existence of probable cause, gross negligence, or improper purpose as a matter of law when the facts are not in dispute.").

[57] *See* Notes of Oct. 1, 2010, meeting with Theodore [Doc. No. 96-5]; Notes of Oct. 3, 2010 meeting with Theodore, Saunders, and Ida [Doc. No. 95-6]; Memorandum to File, Re: Interview of Notary, Kimberly Joyce Leifheit [Cleveland] (Jan. 17, 2011) [Doc. No. 95-10]; Memorandum to File, Re: Meeting With Ted Pendergrass II, Ida Pendergrass, Juanita Saunders, Kimberly Leifheit [Cleveland], Jack Rounick on August 29, 2012 (Aug. 29, 2012) & Notes of Aug. 29, 2012, meeting [Doc. No. 95-11]; *see also Prima facie* Hr'g Tr. [Doc. No. 90-7] at 17–159.

[58] *See* Luber Dep. Dec. 16, 2019 [Doc. No. 92-6] at 17–20; Foster Dep. Feb. 5, 2020 [Doc. No. 91-7] at 10–14.

[59] *See* Letter from Joel Luber to Jack Rounick (Jan. 4, 2013) [Doc. No. 90-13]; Luber Dep. Dec. 16, 2019 [Doc. No. 92-6] at 26–27.

receiving these letters, Bacine and Rounick spoke with Theodore, who provided sufficient rebuttal to each point, and determined that the claimed trip to Delaware was not impossible in light of the nursing staff notes.[60]

Finally, in preparation for the will challenge, Defendant Rounick retained a forensic document examiner to examine Teddy's signature on Theodore's Will. After examination, the expert found that "there is good probability" that the initials on Theodore's Will were made by Teddy and "no evidence" that they were made by Theodore.[61]

The Court further notes that Judge Ott found that Theodore's Will was *prima facie* valid after an evidentiary hearing where Theodore, Ida, Saunders, and Cleveland testified and were cross-examined. While this determination is not preclusive (and Judge Ott clearly determined after the full hearing that the witnesses were untruthful), the *prima facie* standard is higher than that required to show probable cause under the Dragonetti Act.[62] Defendants Rounick and Bacine had probable cause to present Theodore's Will for probate.

### 2. *Defendant Holman had probable cause*

Before agreeing to represent Theodore, Defendant Holman reviewed the file and docket.[63] He also spoke to Rounick, Bacine, and Mannion, who all stated that they believed that

---

[60] *See* Bacine Dep. Feb. 12, 2020 [Doc. No. 92-2] at 72–76, 120.

[61] *See* Carolyn Kurtz, Forensic Document Examination Report, Re: In the Court of Common Pleas of Montgomery County, Pennsylvania – Orphans' Court Division *Estate of Theodore D. Pendergrass, Deceased*, No. 20l0-X0189 [Doc. No. 95-18] at 3.

[62] *See McNeil v. Jordan*, 894 A.2d 1260, 1273–75 (Pa. 2006).

[63] *See* Holman Dep. Feb. 20, 2020 [Doc. No. 92-7] at 21–22; Rounick Dep. Feb. 11, 2020 [Doc. No. 92-3] at 56.

Theodore's Will was not a forgery.[64] Holman then reviewed the transcripts of the depositions taken during discovery and spoke with a number of witnesses identified by Theodore.[65]

"Lawyers can safely act upon facts stated by their clients. They do not incur liability to third persons for filing civil proceedings when the evidence of those facts is later found not credible by the court or jury whose duty it is to try the case. Any other rule would impair the quality of the representation which a client is entitled to receive from his lawyer."[66] Theodore was consistent in the telling of his story, the witnesses corroborated it, and no evidence outright disproved it. Testimony was given under oath and the document was notarized.[67] Defendant Holman had probable cause to defend Theodore's Will against Plaintiff's challenge.

Although Judge Ott eventually determined Theodore's story to be entirely false, the attorneys had probable cause as to the forged will proceedings.[68] Therefore, even if Plaintiff could properly bring a Dragonetti clam, summary judgment as to Bacine, Rounick, and Holman would be granted on this basis.

---

[64] *See* Holman Dep. Feb. 20, 2020 [Doc. No. 92-7] at 10–14, 16–17. Mannion explained to Holman that he believed that the witnesses at the *prima facie* hearing were credible. *Id.* 14–15.

[65] *See* Holman Dep. Feb. 20, 2020 [Doc. No. 92-7] at 29–30; *see also* Holman billing records [Doc. No. 91-13].

[66] *See Meiksin v. Howard Hanna Co.*, 590 A.2d 1303, 1307 (Pa. Super. Ct. 1991).

[67] *See also Commonwealth, to Use of Willow Highlands Co. v. U. S. Fid. & Guar. Co.*, 73 A.2d 422, 425 (Pa. 1950) (holding that a party "is not obliged to suspect that a notary public has made a false certificate of acknowledgment").

[68] Moving Defendants were also not grossly negligent. In the Dragonetti context, gross negligence is "'want of scant care' or 'lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages.'" *Schmidt v. Currie*, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005), *aff'd*, 217 F. App'x 153 (3d Cir. 2007) (quoting *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super. Ct. 2001)). As the actions discussed above demonstrate, Moving Defendants more than met that standard in examining Theodore's claims. No reasonable factfinder could conclude otherwise. Additionally, like the issue of probable cause, gross negligence of an attorney is as analogous to legal malpractice and requires expert testimony where the lack of care is not readily obvious to a layperson. *See id.* at 482.

**IV.    CONCLUSION**

For the reasons discussed above, summary judgment will be granted in favor of all Defendants. An order will be entered.